UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

------------------------------------- X
CINDY KIEMSTEADT,                     :
        Plaintiff,              :   Case No. 1:18-cv-132
    vs.                               :   **COMPLAINT FOR AGE DISCRIMINATION, GENDER DISRCIMINATION; RETALIATION AND FRAUD; JURY DEMAND**
CS DISCO, INC. a Delaware corporation, :
        Defendant.              :
------------------------------------- X

    Plaintiff Cindy Kiemsteadt hereby asserts as her complaint against Defendant CS Disco, Inc. ("Disco") as follows:

## JURISDICTION

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. The claims set forth herein arise under federal law, and the Court has supplemental jurisdiction over the claims asserted under state law.

## VENUE

    2.    Venue is proper under 28 U.S.C. § 1391(b) in this District because the events giving rise to the claims for relief set forth herein occurred in this District.

## PARTIES

    3.    Plaintiff Cindy Kiemsteadt is an individual who is, and at all times relevant hereto, was a citizen of the State of Texas, where she resides currently, and resided at all times relevant hereto. Disco is a corporation formed under the laws of the State of Delaware with offices in Austin and Houston, Texas.

**GENERAL ALLEGATIONS**

4. Disco is a litigation support company that provides software as a service ediscovery solutions. On information and belief, Disco employs over 200 people. Disco is run by its founder and CEO, Mr. Kiwi Camara. Along with Mr. Camara, all of the Company's executives are men. The company's website features only male employees. There are currently no female executives at Disco.

5. Mr. Camara is a controlling presence at Disco. He engages at times in eccentric and erratic behavior. Mr. Camara exerts his control and influence to ensure that Disco's female employees conform to his preferences, i.e. young, pretty and dressed a certain way. For example, Mr. Camara refuses to allow the company to hire a female receptionist unless he sees a picture of her first. He requires no such thing of male employees.

6. Plaintiff is a former sales employee of Disco. She was hired in October of 2015 by Tom Benwell, the former VP of Sales for Disco, to lead the Sales Operations team. Initially, Plaintiff reported directly to Mr. Benwell and assisted in management and implementation of various sales operations, e.g. meeting with and providing operational support to the sales representatives, forecasting, developing the company's salesforce use and protocol, etc. Mr. Benwell left the company at the end of 2015. For a short time, Mr. Camara took over management of the sales department. After Disco hired Bob Clemens to replace Mr. Benwell in April of 2016, Plaintiff reported directly to Mr. Clemens.

7. Shortly after he was hired, Mr. Clemens asked Plaintiff to take over as Director of Channel Programs Success beginning July 1, 2016. The role would focus solely on sales through Disco's channel partners, as distinct from direct sales to clients. Channel partners are other businesses in the industry who have opportunities to market and sell Disco's products to customers.

8.      Plaintiff was reluctant to take on the role.  Historically, Channel Programs had not been adequately supported by Disco to make it a success.  Further, Plaintiff was aware that many channel partners were skeptical of Disco and especially of Mr. Camara.  Plaintiff was aware that certain channel partners viewed Mr. Camara as untrustworthy and likely to undercut any partnership if he perceived that Disco could side-step the channel partner and make the sale direct to the partner's client.

9.      Plaintiff raised her concerns to Mr. Clemens.  She prepared a roadmap laying out the resources Disco would need to devote to Channel Programs to make it a success.  This included technical support resources (including both technical and personnel resources for producing live demonstrations of the product for clients), marketing, training, and so forth.  Mr. Clemens reviewed the roadmap, agreed with the approach and assured Plaintiff that Disco would provide the necessary support.  Based on that assurance, Plaintiff agreed to take on the Channel Programs director role.

10.     In the short period in which she led Channel Programs, there is no doubt Plaintiff succeeded.  She was highly regarded by her peers and the channel partners with whom she worked.  She worked successfully to earn back trust in Disco from the channel partners in short order.

11.     Her Monthly Recurring Revenue ("MRR") numbers also reflected her success.  MRR measures the revenue stream flowing in to the company from a representative's assigned accounts.  From July 2016 until January of 2017 (when she was notified she was being fired), Plaintiff was the second highest performer company-wide amongst *all* sales representatives (including direct sales) in MRR.  With the exception of direct sales representative Alex Torry, Plaintiff's MMR was more than *double* that of any other sales representative nearly every month for the six months prior to her termination.

12. Moreover, Plaintiff delivered this steady sales performance despite numerous challenges. Among other things, Plaintiff inherited significant "losses" every month from contracts closing and cases settling out that pre-dated her tenure in Channel Programs, which affected her MRR. Further, channel sales were treated as second fiddle to direct sales at Disco. For example, the company dedicated approximately six sales representatives to direct sales, and only one (Plaintiff) to channel sales. Every direct sales associate had a dedicated SDR representative assigned to them to cold call new accounts. Plaintiff had none. Despite the assurance provided to Plaintiff prior to taking the new position, requests for channel sales support (e.g., in the areas of marketing, technology, communications, etc.) were largely ignored or met with opposition and/or delay.

13. In early January of 2016, Mr. Clemens informed Plaintiff that he was first resigning and then later informed her he was instead taking an "extended sabbatical" from the company. He informed Plaintiff that he would be transitioning out of matters until April of 2017, but that this fact should not be communicated to the channel partners. With Mr. Benwell having left the company and Mr. Clemens in the process of leaving (or at least taking an extended sabbatical), control over Channel Programs once again reverted to Mr. Camara. Plaintiff does not fit his mold. She is a conservative, 59-year-old woman. And indeed, shortly after Channel Programs reverted back to Mr. Camara, he fired Plaintiff.

14. On January 26, 2017, Disco informed Plaintiff that it was terminating her employment. Plaintiff, at age 59, was by far the oldest member of the sales staff at the time of her termination.

15. Mr. Clemens called Plaintiff on the phone to discuss her employment termination. Mr. Clemens stated that Plaintiff's termination was due to no fault of hers, and that it was *not*

performance-based. However, adding insult to injury, he conveyed that nevertheless the "narrative" communicated to the rest of the company would be that her termination was due to performance issues.

16. Mr. Clemens also advised her that Disco wanted to hire someone more junior and who was able to conduct demos. Mr. Clemens made clear that the termination decision was not made by or supported by him.

17. Disco requested Plaintiff continue to work for a short period of time to help with transitioning matters to her replacement, and that if she did so, Disco would pay Plaintiff through the end of June 2017. Mr. Clemens advised that Disco would provide a document laying out her transition duties.

18. As requested, Plaintiff continued to work as usual. However, Plaintiff was not provided with any transition document. Her multiple follow up requests for it were ignored for five weeks. During this time period, she continued to work and travel as requested.

19. When she was finally provided the document by Disco, it did not relate to the transition her duties. Instead, it required that she waive all claims against Disco and promise never to say anything negative about the company or its officers. Plaintiff promptly notified the company on February 24, 2017 that she was not willing to sign this agreement and, among other things, waive all rights. Plaintiff also stated that she believed the decision to terminate her employment constituted unlawful discrimination by Disco on the basis of her age and gender. Following Plaintiff's assertion of age and gender discrimination, Disco advised that the real reason Plaintiff was terminated was due to poor performance, a newfound position at odds with the reason previously communicated by Mr. Clemens.

20. Disco's position is inconsistent and illogical. Plaintiff never received a negative performance review and her sales numbers were exemplary. She was barely given a chance to turn around a flailing channel sales department, and yet she was succeeding. Furthermore, belying any notion of a true performance issue, there are two younger, female sales associates whose MRR numbers are materially worse than Plaintiff's, and yet neither have been fired. Indeed, one of them has been employed at Disco longer than Plaintiff, has consistently under performed in sales, and yet has been advised by Mr. Camara himself that he always "has her back."

21. Moreover, following Plaintiff's assertion of age and gender discrimination, Disco engaged in a course of retaliation against her. Among other things, Disco refused to communicate with Plaintiff regarding her employment transition and termination. Despite request after request, Disco refused to provide Plaintiff even the most basic information, such as her last day of employment. After she complained of discrimination, Disco also sent Plaintiff threatening communications ordering her not to speak about her employment status. This punitive directive was an obvious attempt to keep her quiet about the company's treatment of her.

22. The company's refusal to provide her information on her termination date and prohibition of any transition discussion with channel partners put her an untenable position of having to openly deceive the business partners who trusted her. She advised the company of this and yet the company still did nothing. Plaintiff's last day of employment was April 21, 2017.

**23.** On information and belief, the candidates considered to replace Plaintiff have all been men or far younger women. Currently, Plaintiff's duties are being performed by a woman approximately 25 years Plaintiff's junior.

## COUNT I

### AGE DISCRIMINATION

24. Plaintiff hereby incorporates by reference herein the allegations of paragraphs 1-23 above.

25. Disco employees 20 or more individuals.

26. Plaintiff was an employee of Disco and performed her job to the reasonable satisfaction of Disco expectations.

27. Plaintiff suffered an adverse employment action when Disco discharged her from employment.

28. At the time of her discharge from employment, Plaintiff was 59 years old.

29. Disco discharged Plaintiff from employment because of her age (59), in violation of the Age Discrimination in Employment Act (29 U.S.C. § 626).

30. Plaintiff has suffered damages as a result of Disco's discrimination, including, loss of past wages and benefits, loss of future earnings and benefits and emotional distress in an amount to be proven.

31. Disco's discriminatory actions were taken by and/or ratified by its managing agents.

32. Disco's conduct in terminating Plaintiff's employment was engaged in with malice and/or reckless disregard for Plaintiff's rights under federal and state law. Accordingly, punitive damages are warranted in an amount to be proven at trial.

33. Plaintiff is also entitled to recover her attorneys' fees and costs pursuant to statute.

34. Plaintiff has obtained the requisite right to sue letter and has exhausted her administrative remedies.

## COUNT II

### GENDER DISCRIMINATION

35. Plaintiff hereby incorporates by reference herein the allegations of paragraphs 1-34 above.

36. Plaintiff is a female and was an employee of Disco and performed her job to the reasonable satisfaction of Disco expectations.

37. Plaintiff suffered an adverse employment action when Disco discharged her from employment.

38. Plaintiff's discharge from employment at Disco was because of or motivated by her sex (female) in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e).

39. Plaintiff has suffered damages as a result of Disco's discrimination, including, loss of past wages and benefits, loss of future earnings and benefits and emotional distress in an amount to be proven.

40. Disco's discriminatory actions were taken by and/or ratified by its managing agents.

41. Disco's conduct in terminating Plaintiff's employment was engaged in with malice and/or reckless disregard for Plaintiff's rights under federal and state law. Accordingly, punitive damages are warranted in an amount to be proven at trial.

42. Plaintiff is also entitled to recover her attorneys' fees and costs pursuant to statute.

43. Plaintiff has obtained the requisite right to sue letter and has exhausted her administrative remedies.

## COUNT III

### RETALIATION

44. Plaintiff hereby incorporates by reference the allegations of paragraphs 1-44 above.

45. Plaintiff engaged in protected activity when she complained in writing that Disco's decision to terminate her employment was because due to age and gender.

46. After Plaintiff complained, Disco retaliated against her by, among other things, refusing to provide even basic employment information to her, such as her termination date, and directing her that she was forbidden to communicate her employment status with her channel partners.

47. In terminating Plaintiff's employment, Disco violated 42 U.S.C. § 2000e.

48. Plaintiff has suffered damages as a result of Disco's retaliation, including, loss of past wages and benefits, loss of future earnings and benefits and emotional distress in an amount to be proven at trial.

49. Disco's retaliatory actions were taken by and/or ratified by its managing agents.

50. Disco's conduct in retaliating against Plaintiff's was engaged in with malice and/or reckless disregard for Plaintiff's rights under federal and state law. Accordingly, punitive damages are warranted in an amount to be proven at trial.

51. Plaintiff is also entitled to recover her attorneys' fees and costs pursuant to statute.

52. Plaintiff has obtained the requisite right to sue letter and has exhausted her administrative remedies.

## COUNT IV

## FRAUD

53.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1-52 above.

54.     Disco made a material representation to Plaintiff, namely that if Plaintiff continued to work for a short period of time to help with transitioning matters to her replacement, Disco would pay Plaintiff through the end of June 2017.

55.     Disco's representation was false.  At the time the representation was made, Disco knew it was false.  Disco did not tell her that it would only make good on its promise to pay her through June if she gave up all her legal rights and promised not to disparage the company – a fact known to Disco at the time it made the representation to Plaintiff.  In fact, Disco intended to extract additional work out of Plaintiff and a smooth transition and had no intention of paying Plaintiff through June 2017 in return for Plaintiff's efforts, unless Plaintiff also signed a document waiving all of her legal rights.

56.     Disco intended that Plaintiff act upon the representation by, among other things, continuing her employment at Disco and engaging in the transition duties.  Disco intended to deceive Plaintiff as it had no intention of continuing to pay Plaintiff through June if she did not sign a document waiving all of her legal rights.

57.     Plaintiff did act in reliance on Disco's representation by, among other things, continuing to work for Disco and perform her transition duties and expecting that she would be paid through June of 2017.

58.     As a result of Disco's misrepresentation, Plaintiff suffered injury.  Among other things, Plaintiff was not paid through June as she was promised, and lost valuable time in her job search by continuing to work for Defendant.

59. Disco's conduct was engaged in by executives and officers of the company with malice, fraud, or gross negligence, entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

Plaintiff hereby prays for judgment against Defendant on all counts and for recovery as follows:

1. Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

2. Damages for emotional distress and humiliation in an amount to be proven at trial;

3. Punitive damages in an amount to be proven at trial;

4. Prejudgment interest; and

5. Attorneys' fees and costs pursuant to statute.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to any and all claims for relief, causes of action and counts subject to trial by jury.

-12-

RAFKIN ESQ.
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ 07869
(973) 891-3370

THE LAW OFFICES OF KELL A. SIMON
902 EAST 5TH STREET, SUITE 207
AUSTIN, TEXAS 78702
(512) 898-9662 Telephone
(512) 368-9144 Facsimile


By: /s/ Kell A. Simon
    Kell A. Simon
    State Bar No. 2406088

Attorneys for Plaintiff